MURRELL DOBBINS et al.

*v.*

CHARLES B. COLES et al.

[Filed January 18th, 1900.]

Where a committee was appointed at a regularly-called creditors' meeting to investigate an insolvent's assets, and was authorized at a subsequent meeting to adjust claims against the insolvent's estate, without preference except as to certain secured claims, and to distribute certain of the property, &c., but it did not appear that all the creditors knew of such distribution, or that there had been a regularly-called creditors' meeting after that at which the committee was appointed, or that all the creditors were present at any meeting when such distribution was discussed and approved, and it further appeared that those present had agreed to a distribution under the impression that the assets would prove sufficient to pay all claims, creditors not sharing in such distribution were entitled, on a deficit, to an accounting of the value of the assets of the estate, in order that a dividend might be declared to all the creditors, though it did not appear that the committee had been guilty of any fraud.

The general scope of the bill in this case was set out in the former decision rendered upon a demurrer to that pleading. The facts appearing upon the trial were these: Matthew Flemming, in 1895, was engaged in building thirty houses at Collingswood, N. J., upon land the title to which was in the name of one Connolly, but as trustee for Flemming. Flemming became financially embarrassed, left the state, and an attachment was issued against his property.

On August 16th, 1895, Connolly conveyed what was left of the real estate to the West Jersey Title and Guaranty Company, and on the same day, Darnell, as trustee for the said Flemming, made a bill of sale to the same company of the personal property on and about the premises.

On September 4th there was a meeting of Flemming's creditors called at Collingswood, at which meeting a committee was appointed, the members of which were Charles B. Coles, John S. MacNaughton and John A. Gross, for the purpose of investi-

gating the nature and value of the assets of Flemming and to confer with the West Jersey Title Company and Mr. Darnell as to the encumbrances upon Flemming's property, and to formulate a plan by which Flemming's operations might be completed and handled, and also a plan by which an amicable settlement might be had with all the creditors, and to report to the creditors on September 9th following.

On September 9th twenty-five creditors were present at the meeting, and the report of the committee was read and the recommendations therein were approved. The report was signed by Coles and Gross, two of the three members of the committee. The report showed property estimated at $100,250, encumbrances amounting to $60,150 and claims amounting to $27,732.32.

John S. MacNaughton, Charles B. Coles, Charles R. Stevenson, John A. Gross and Thomas D. Weaver were appointed a committee to act for the creditors and the West Jersey Title Company was appointed trustee.

On September 11th, at a meeting of creditors, it was resolved that a new agreement, embodying the suggestions made at that meeting between Flemming and the creditors, be prepared. This agreement, after reciting the attachments which had been made by Connolly and Darnell and Flemming to the title company and declaring a trust in the title company in favor of the creditors, provided that the committee representing all the creditors was authorized to adjust the claims to the best interests of all the creditors and without giving preference or priority to any except the two secured creditors and the two attaching creditors, who had legal preferences or prior liens, and to direct the title company, trustee, to make such sales, conveyances, mortgages or pledges and assignments as the said committee might deem necessary and for the best interests of the said creditors; to direct the collection and payment of any moneys to be raised and paid by the said title company, trustee, and if deemed advisable, to direct the completion of such buildings as were still unfinished, or to surrender the equity of such buildings to the mortgagees, and generally to do all lawful acts necessary to the winding up and settlement of the said operation.

The two secured creditors alluded to in the said agreement were Charles B. Coles and Schivers and Moffatt.

Afterwards a meeting of the committee was held on August 15th, at which Messrs. Coles, MacNaughton and Gross were present, and the committee, after reducing the value of the property which Coles held as security for his claim, proceeded to distribute property to claimants upon a value fixed by the committee.

On motion of Mr. MacNaughton, a member of the committee, the value fixed upon the equity of redemption of lot No. 2, section A, was reduced to $500, and title was made to Mrs. Mac-Naughton, his wife, at that rate, in settlement of MacNaughton's claim against Flemming.

Mr. Charles B. Coles held a deed of property for certain claims, as collateral security for the same, and, on motion, it was ordered that absolute deeds be made to him of the said property at a value fixed.

Mr. Gross also agreed to take property in settlement of his claim at a value also fixed by the committee.

At the same meeting one Seigle, by his attorney, agreed to take a house in settlement of his claim, and a Mr. Algor agreed to take another house for the same purpose.

At the same meeting it was resolved to accept the proposition of Mr. Dobbins, the complainant, to take property, but this was never carried out. At this time the signatures of all the creditors had not been obtained to the composition agreement, agreed upon on September 11th.

On October 9th, 1895, there was a meeting which is styled "a creditors' meeting," but concerning which there is nothing to show that it was held in pursuance of an adjournment of a former creditors' meeting, or upon notice to all the creditors. There were present four members of the committee, Mr. Darnell and two lawyers. At that meeting Charles B. Coles proposed to take sufficient material to pay off the Miller Brothers' attachment, and the amount of the building and loan arrearages and certain taxes, to which proposition the meeting acceded. Certain other creditors were also given material for their claims at invoice prices.

Dobbins v. Coles.

On October 19th Messrs. Cross, MacNaughton, Coles, Stevenson, Darnell, Peirce and Bleakly met. This meeting is marked in the minutes as "a creditors' meeting," but it obviously was not such. At this meeting other claimants were given permission to take property for their claims.

On December 3d there was a meeting of the committee, at which there was a statement made of the amounts which had been paid by Mr. Coles in settlement of the attachments, and of the property which he had taken for the said payment, and

"it was ordered that the secretary of the committee and the West Jersey Title Company should make the deeds and bill of sale to carry out the various settlements made by the committee, upon payment to them of the various moneys which the respective creditors are to pay as shown by the statement prepared to-day."

Then follows a statement of the settlement. Afterwards a notice of sale of the undistributed property was given by the committee to occur on June 6th, 1895. The creditors were requested to be present at such sale, and it was stated that it was not probable that enough would be realized to pay all claims in full, and a meeting of creditors was called for June 4th.

On June 4th, upon motion of Mr. Dobbins, the sale was postponed, and it was ordered that the committee arrange a meeting of the creditors at Collingswood, at which the property should be distributed by auction among the creditors in proportion to their claims. A meeting was had on June 20th, when it was ordered that the property be disposed of as soon as possible—not later than July 2d.

The property was sold and realized $926.88, to pay unsettled claims of $9,152.73. The complainant, for himself and others who had not taken property, then filed this bill to have the inequitable distribution of the assets rectified.

*Mr. Samuel K. Robbins,* for the complainants.

*Mr. George H. Peirce* and *Mr. Edward G. C. Bleakly,* for the defendants.

REED, V. C.

It is manifest that the result of the operation, conducted by the committee, is directly contrary to the letter and spirit of the agreement by which the committee was to be controlled. That agreement was to secure equality among the unsecured creditors.

The answer of the defendant is that the complainants are estopped from now raising any objection to the manner in which the property was distributed to the creditors. It is said that the complainants knew that property was being distributed, and they then raised no objection ; that they had the opportunity to share in such distribution but chose to await the sale of such property as might remain undistributed and to take their percentage of the product of such sale.

It is clear that some of the complainants knew that property was being distributed. It is not clear that all of the creditors knew this. Indeed, there is no proof that there ever was a regularly-called creditors' meeting after that of September 4th, nor is there proof that all of the complainants were present at any such meeting when the matter of distribution was discussed and approved. And as to those who knew that such distribution was occurring and who interposed no objection at the time, it is to my mind clear that their consent to such distribution was based upon the report of the committee presented at the meeting of September 19th, at which the assets were shown to be about $40,000 and the debts less than $30,000. None of the creditors, unless members of the committee for some time at least, were informed that there would not be enough to pay all the debts if the property was not sacrificed, and they undoubtedly thought that the taking of the property by some of the creditors at the valuation fixed was calculated to prevent any sacrifice. It is clear, from the testimony of defendants' witnesses, that until near the end there was no thought of a deficit and that the property was taken by some of the claimants, and such taking was assented to by other claimants under the impression that there would be enough to pay all. There was a generally-prevalent mistake, which worked a very inequitable result.

Dobbins *v.* Coles.

In my judgment, this result should now be corrected so far as it is possible to do so. I don't find any fraud in the manner in which the distribution was made. True, the members of the committee took property for their own claims, but at the same time all claimants were permitted to select and take property upon a similar basis of valuation. It is unfortunate that the result has been as it is.

In my judgment, there should be an account taken by a master of the value of the property received by each claimant at the time of its reception. This value need not necessarily be upon the basis of the value at which it was taken, for it may have been taken for more than its value for the purpose of cancelling the claimant's debt. Where the property was taken at invoice prices that should be regarded as its value, but where the valuations were fixed by the committee, the true value at the time should be found by the master.

I think also that if any of the property received by a claimant is still in the same condition it was when received, and the claimant wishes to return the property and leave his claim upon the same footing as the other creditors who have received none, to be paid out of the fund which will be finally realized and distributed, he should have the opportunity of returning his property. Any claimant desiring to do so can make his offer to do so to the master in writing within twenty days after the signing of the interlocutory decree, and upon such tender the master shall inquire whether such property is in substantially the same condition it was in when received by the claimant, and whether any profit has been received by the claimant from such property while in his possession. Any property so returned will, of course, be sold by order of this court.

The purpose of the accounting, and the scheme for the returning of property, is to fix the valuation of the entire assets of Flemming, so that a percentage may be declared to all the claimants, and to fix the amount of a call which will have to be made upon those claimants who have received property unreturned, to pay the difference between the value of such property received and the amount of their dividend to be fixed upon final accounting.

Mr. Coles will be entitled to hold the property to which he had title as collateral security for his debt without contribution, so far as the value of such property does not exceed the amount of the debt.

In case of property taken upon the understanding that it is to be in consideration of a payment of the attachment lien, of the taxes and other liens, the person making such payment will be subrogated to the right of the lienor whose lien he paid, and will hold the property taken by him in consideration of such payment, without liability to contribution, to the extent that its value does not exceed the amount of the lien so paid by him.

The necessity of further direction in working out in detail this scheme to make an equal distribution of the assets under the present circumstances will no doubt occur to counsel, and such directions may be embodied in the interlocutory decree or any future directions as the requirement for the same may occur.